# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LAMAR RAY**
      **Petitioner,**

    **v.**                                    **Case No. 07-C-1072**
                                                  **(Criminal Case No. 04-CR-71)**

**UNITED STATES OF AMERICA,**
      **Respondent.**

## DECISION AND ORDER

Petitioner Lamar Ray moves pursuant to 28 U.S.C. § 2255 to vacate his sentence on multiple counts of armed robbery and use of a firearm during a crime of violence. After appointing counsel for petitioner, I held an evidentiary hearing on the motion, then permitted the parties to file post-hearing briefs. On review of the parties' submissions, and the entire record, I now deny the motion.

## I. FACTS AND BACKGROUND

### A. Procedural History

Petitioner pleaded guilty to three armed robberies under 18 U.S.C. §§ 2113(d) & 1951, and two counts of use of a firearm during a crime of violence under 18 U.S.C. § 924(c), and on November 29, 2006, I sentenced him to a total of 492 months in prison, the term jointly recommended by the parties pursuant to their plea agreement. Petitioner took no appeal but on December 3, 2007, he filed a motion to vacate his sentence under § 2255. He subsequently amended the motion on December 20, 2007, and resubmitted it on April 7, 2008.

In the amended motion, petitioner claimed that his trial counsel provided ineffective

assistance by (1) failing to investigate police beatings to which petitioner was allegedly subjected after his arrest; (2) failing to move to suppress his resulting confession; (3) improperly inducing his guilty plea with, inter alia, promises of a sentence reduction based on substantial assistance; and (4) failing to present mitigating psychological evidence at sentencing. On April 24, 2008, I screened the motion pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, finding that these were at least colorable constitutional claims, see, e.g., Glover v. United States, 531 U.S. 198 (2001); Kimmelman v. Morrison, 477 U.S. 365 (1986); Hill v. Lockhart, 474 U.S. 52 (1985); Strickland v. Washington, 466 U.S. 668 (1984), which petitioner did not have to raise on direct appeal, Massaro v. United States, 538 U.S. 500 (2003), and which appeared to fall within one of the exceptions to the appeal/collateral attack waiver contained in petitioner's plea agreement.[1]  I therefore directed the government to respond.

The government filed its response on July 24, 2008, including an affidavit from petitioner's trial counsel, Calvin Malone. Malone first indicated that petitioner never advised him of the alleged beatings; nor did counsel know that petitioner received medical attention after his arrest. He averred that he therefore acquired no basis for filing a motion to suppress based on the alleged abuse. Second, Malone stated that while he discussed with petitioner the possibility of a sentence reduction motion under U.S.S.G. § 5K1.1 or Fed. R. Crim. P. 35, he denied improperly inducing petitioner's plea with promises or assurances of credit for

---

[1]In the plea agreement, petitioner waived the right to appeal or challenge his conviction or sentence in any post-conviction proceeding, including a motion under 28 U.S.C. § 2255. The waiver exempted appeals or motions based on (1) any punishment in excess of the statutory maximum, (2) the sentencing court's reliance on any constitutionally impermissible factor, and (3) ineffective assistance of counsel. (Plea Agreement [Case No. 04-CR-71, Docket # 88] at 15 ¶ 29.)

cooperation. Finally, Malone indicated that while he did obtain a neuro-psychological evaluation of petitioner, he made a strategic decision not to submit the report at sentencing because it did not bear out petitioner's claims and thus would have been unhelpful and possibly harmful.

Meanwhile, petitioner had filed a civil rights action under 42 U.S.C. § 1983 against the arresting officers alleging excessive force.[2] Petitioner asked that his § 2255 action be stayed pending resolution of the § 1983 case. While I declined to issue a formal stay, I did withhold issuance of a decision pending the outcome of the § 1983 trial. On January 28, 2009, a jury returned a verdict in favor of the officers in the § 1983 case. (Case No. 06-C-1226, Docket # 140.) On February 12, 2009, I issued an order permitting the parties to comment on the effect, if any, of this verdict on the pending § 2255 motion. Petitioner argued that the verdict should have no effect. The government indicated that while the verdict may be relevant to the prejudice prong of petitioner's ineffective assistance claim (in that it tended to show that the suppression motion petitioner claimed his attorney ought to have filed would have failed), the government believed that there was no deficient attorney performance in the first instance making it unnecessary for the court to reach the issue of prejudice.

On review of the parties' submissions, on May 7, 2009, I concluded that because petitioner and Malone presented materially different versions of what occurred – and I could not determine who was telling the truth based on the submissions alone – an evidentiary

---

[2]Petitioner initially filed the § 1983 suit on March 10, 2006, but on May 31, 2006 another judge of this district court dismissed it for failure to pay the initial filing fee. (See Pet.'s Ex. 6; Case No. 06-C-306, Docket # 1 & 4.) It appears that the complaint in Case No. 06-C-306 was never served on the defendants. Petitioner re-filed the suit on November 27, 2006, with the complaint entered on the court's docket on November 29, 2006, the same day I sentenced petitioner in the underlying criminal case. (See Case No. 06-C-1226, Docket # 1.)

3

hearing was necessary.³ Based on that determination, on June 3, 2009, I appointed counsel for petitioner pursuant to Rule 8(c) of the Rules Governing Section 2255 Proceedings.

On June 23, 2009, I conducted a status conference with counsel and scheduled an evidentiary hearing for September 17, 2009. The parties subsequently requested – and I granted – several adjournments to permit the parties to explore the possibility of a Rule 35(b) motion and the availability of an additional claim for relief.

On March 19, 2010, petitioner, through counsel, filed a motion for leave to file a second amended § 2255 motion. In the motion to amend, petitioner sought to withdraw his claims of ineffective assistance based on failure to conduct a pre-trial investigation and failure to present mitigating evidence at sentencing, but requested permission to add a claim under Brady v. Maryland, 373 U.S. 83 (1963) based on the government's failure to provide Attorney Malone with records related to petitioner's in-custody trip to Columbia St. Mary's Hospital for treatment of the injuries he sustained on arrest. Over the government's objection, I granted the motion to amend. The case then proceeded to hearing on two claims: (1) an alleged Brady violation and (2) alleged ineffective assistance based on (a) failure to move to suppress petitioner's statements and (b) inducing petitioner's plea by guaranteeing a Rule 35 motion.

---

³As I indicated in the May 7, 2009 order, petitioner's primary ineffective assistance claim presented two factual issues – (1) did petitioner advise counsel of the alleged beatings and (2) did the abuse actually occur. The government defended the claim primarily on the performance prong, requiring resolution of the first factual issue. In order to demonstrate prejudice on this claim, petitioner would have to show that a motion to suppress would have been meritorious. See United States v. Cieslowski, 410 F.3d 353, 360 (7th Cir. 2005). This, in turn, would implicate the second factual issue. Given the posture of the case, I found that it made sense to focus first on the performance issue. Thus, the evidentiary hearing focused on petitioner's interactions with counsel, rather than the potential merits of a motion to suppress.

**B.     Hearing Testimony**

**1.     Petitioner**

Petitioner testified that during his initial meeting with Attorney Malone on November 24, 2004, he told Malone that he was assaulted twice by the arresting officers and that he was denied contact with an attorney during his post-arrest interrogation. (Aug. 11, 2010 Evid. Hr'g Tr. at 32.)[4]  Petitioner identified a photo taken after his arrest on November 19, 2004, which shows him to have a split lip (Pet.'s Ex. 1), and testified that he looked essentially the same when he met Malone a few days later (Tr. at 33).  Petitioner claimed that, after he had been handcuffed by the arresting officers, an Officer Kuspa pulled his head back and pistol whipped him three times, creating the injuries depicted in the photo.  (Tr. at 34-35.)  He testified that he was then taken to the police station and interrogated by a Detective Starr, who allegedly told him that he could either talk to her or "deal with those guys [i.e., the arresting officers.]  You remember what happened at the scene."  (Tr. at 37.)  He testified that he decided to cooperate to avoid further violence.  (Tr. at 38.)  Petitioner claimed that he relayed these events to Malone (Tr. at 39), and Malone told him that he would use the information as a "bargaining chip" to try to limit the charges, but that never happened (Tr. at 42).

Petitioner testified that, although he met with law enforcement several times in an effort to cooperate, he nevertheless expected the case to go to trial, and that the decision to enter a plea was made on the day of trial.  (Tr. at 39-40.)  He indicated that he arrived that day expecting a trial, but Malone told him that he had spoken to the AUSA and for the first time

---

[4]Petitioner has at no point alleged a separate claim of denial of counsel during interrogation, so I need not discuss the matter further.  In any event, Malone credibly testified that petitioner made no such complaint to him.  (Tr. at 63.)

5

mentioned a Rule 35 motion. (Tr. at 41.) Petitioner stated that the government offered him a plea for 41 years, down from the previous offer of 57 years, but he still found this unacceptable. (Tr. at 42-43.) However, Malone, referring to a Rule 35 motion, stated, "This is part of the plea which you will receive." (Tr. at 44.) Petitioner testified that Malone further stated that "this is part of the procedure." (Tr. at 45.) Even though his written plea agreement contained no promise of a Rule 35 motion, petitioner testified that he believed, based on what Malone told him, that this was part of the deal. (Tr. at 45.)

On cross-examination, petitioner admitted that, despite Malone's failure to file a motion to suppress based on the alleged police abuse, he never complained to the court or asked for another lawyer (Tr. at 52), and during the plea colloquy he expressed satisfaction with Malone's efforts (Tr. at 56-57). Petitioner also admitted that he failed to mention the alleged post-arrest abuse to pre-trial services, to the psychologist and mitigation expert retained by Attorney Malone, or to the pre-sentence report writer. (Tr. at 54-56.) Nor did he mention it at sentencing. (Tr. at 60.) He further admitted that he was, in 2007, able to obtain the medical records from Columbia St. Mary's regarding his post arrest treatment by writing directly to the hospital. (Tr. at 51; see also Pet.'s Ex. 3.) When asked if there was any reason why he could not have done so during the pendency of the criminal case, petitioner stated that he relied on his lawyer. (Tr. at 52.)

Regarding his Rule 35-related claim, petitioner admitted that, during the plea colloquy, he denied receiving any promises outside the written plea agreement. (Tr. at 57.) He attempted to explain that, "Malone never said this was a promise. He said this is the procedure." (Tr. at 57.) However, when pressed by the government to clarify whether Malone said that "there is a procedure" to obtain a sentence reduction, or whether Malone said this is

6

"going to happen in your case," petitioner claimed Malone said: "This is going to happen in your case." (Tr. at 58.) Petitioner also stated that, although he told the court during the plea colloquy that he was, in fact, guilty of the charges, he pled guilty to charges on which he was not actually guilty. (Tr. at 59.)

### 2. Attorney Malone

Malone testified that he had been a practicing attorney since 1983, employed by Federal Defender Services since 2002 (Tr. at 8), and that he had never been convicted of a crime involving dishonesty, disciplined or reprimanded by the state bar, or found ineffective by any court (Tr. at 12-13). Malone testified that he first met petitioner on November 24, 2004, prior to petitioner's first court appearance on the charges. Although the meeting occurred within just a few days of petitioner's arrest, Malone did not recall nor did his notes reflect anything unusual about petitioner's appearance. (Tr. at 14.) Petitioner said nothing at that meeting, nor at any subsequent meeting, about being pistol whipped by the arresting officers. (Tr. at 14-15.) Reviewing his file, Malone testified that he met with petitioner numerous times prior to the entry of petitioner's guilty plea, and his notes from those meeting reflect nothing about pistol whipping. Nor did petitioner ever request that Malone move to suppress petitioner's confession based on police abuse. (Tr. at 15-16.)

Malone recalled reading a police report mentioning that the officers used "focused strikes" to effectuate petitioner's arrest (Pet.'s Ex. 2; Tr. at 9-10), but under the circumstances of this case – where petitioner, wanted for several home-invasion/abduction-type robberies, was fleeing from the police – that report did not raise red flags. Malone further explained that, at the time he first met petitioner, petitioner was already cooperating with the government. (Tr. at 17-18.) Further, nothing in the discovery supported petitioner's claim that he was compelled

7

to speak or face further strikes or other physical abuse. (Tr. at 19.)

Regarding the Rule 35 issue, Malone testified that part of his strategy in defending petitioner was to attempt to obtain sentencing consideration based on cooperation. (Tr. at 9.) However, Malone denied promising petitioner that such a motion would materialize or was guaranteed. (Tr. at 20, 30.) He further testified that petitioner received the government's standard proffer letter, which makes no promises as to sentencing credit. Consistent with that proffer letter, Malone testified that he emphasized to petitioner that the government could not and would not promise him anything specific for his cooperation other than not to use his debriefing statements directly against him. (Tr. at 21-22.) Malone testified that when discussing cooperation with clients, he explains that he cannot guarantee a motion because it is up to the government to bring it. (Tr. at 64.) Further, the government's discretion to bring a motion was spelled out in petitioner's plea agreement. (Tr. at 65.)

Malone testified that the government's case was "extremely strong," and that he and petitioner discussed a coercion defense, which Malone viewed as weak. (Tr. at 68.) Given the aggravated nature of the crimes, Malone agreed that the case had "bad facts." (Tr. at 69.) Malone reviewed the affidavit he had previously submitted and re-affirmed its contents. (Tr. at 13.)

### 3. Officer Kraemer

Petitioner called Officer Laura Kraemer of the Milwaukee Police Department ("MPD") open records division regarding his Brady claim. (Tr. at 1-2.) Officer Kraemer testified that, pursuant to a request from petitioner's § 2255 counsel, she searched for department records related to petitioner's medical transport following his arrest but was unable to find any responsive documents. (Tr. at 3; Pet's Ex. 8 & 9.) She testified that it was police procedure

8

to create a report when a suspect is transferred for medical treatment. (Tr. at 4.)

On cross examination, Officer Kraemer testified that the form used to document a medical transport is called "PP-42," a document created in triplicate, with one copy forwarded to the MPD's medical section, the second to the ambulance provider, and the third to the hospital or other medical facility where the prisoner is taken. (Tr. at 5-6.) The officer or detective assigned to the case would not keep a copy. (Tr. at 6.)

## II. DISCUSSION

### A. Brady Claim

Petitioner first argues that the government violated Brady by failing to provide reports regarding his trip, while in MPD custody, to Columbia St. Mary's Hospital for medical treatment. Petitioner notes that, according to Officer Kraemer's testimony, this trip should have generated a report, yet no documentation was included in the discovery in his criminal case. He does not suggest that the U.S. Attorney's Office knew of such a report yet failed to turn it over; rather, he alleges that the police did not create it or, if they did, did not provide it to the prosecutor.

In order to make out a Brady claim, petitioner must prove that (1) the evidence at issue was "favorable," either because it was exculpatory or impeaching; (2) the evidence was "suppressed" by the government, either willfully or inadvertently;[5] and (3) the evidence was "material." E.g., United States v. Kimoto, 588 F.3d 464, 474 (7th Cir. 2009), cert. denied, 130 S. Ct. 2079 (2010); United States v. Daniel, 576 F.3d 772, 774 (7th Cir. 2009); United States v. Roberts, 534 F.3d 560, 572 (7th Cir. 2008), cert. denied, 129 S. Ct. 1028 (2009). Courts

---

[5]Such evidence includes information which may be known only to the police investigators and not the prosecutors. United States v. Souffront, 338 F.3d 809, 819-20 (7th Cir. 2003) (citing Kyles v. Whitley, 514 U.S. 419, 433-34 (1995)).

9

have generally interpreted the term "favorable" broadly, erring on the side of requiring disclosure, and without specific inquiry into whether the evidence would be admissible or usable in its present form. See, e.g., United States v. Rodriguez, 496 F.3d 221, 226 n.4 (2d Cir. 2007); United States v. Veras, 51 F.3d 1365, 1374-75 (7th Cir. 1995); United States v. Carter, 313 F. Supp. 2d 921, 925 (E.D. Wis. 2004). I will therefore assume, arguendo, that the evidence at issue here is "favorable" under Brady. However, petitioner cannot make out the other two elements needed to prove a violation of his rights.

Evidence is "suppressed" for Brady purposes when, irrespective of the good or bad faith of the prosecution, (1) the prosecution failed to disclose the evidence in time for the defendant to make use of it, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence. United States v. Todd, 424 F.3d 525, 534 (7th Cir. 2005). However, there "is a difference 'between those situations in which the police fail to disclose to the defendant evidence that it knows to be material and exculpatory, and those situations in which police simply fail to preserve potentially exculpatory evidence.'" Kimoto, 588 F.3d at 474-75 (quoting United States v. Chaparro-Alcantara, 226 F.3d 616, 623 (7th Cir. 2000)). In the latter situation, the defendant must demonstrate (1) that the government acted in bad faith; (2) that the exculpatory value of the evidence was apparent before it was destroyed; and (3) that the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. Id. at 475; see also Arizona v. Youngblood, 488 U.S. 51, 58 (1988) (holding that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law").

In the present case, petitioner fails to show that the police created or retained any

10

records pertaining to his trip to the hospital. Officer Kraemer testified that she searched for such documentation but found nothing. Thus, this is not a situation in which the government suppressed available evidence but, at most, a situation in which the police failed to create and/or preserve potentially favorable evidence.[6] It follows that petitioner must demonstrate bad faith on the part of the police, something he does not even attempt to do. See, e.g., Jones v. McCaughtry, 965 F.2d 473, 477 (7th Cir. 1992) (explaining that to show bad faith the petitioner must prove "official animus" or a "conscious effort to suppress exculpatory evidence").[7]

Further, even if the police improperly destroyed or concealed this evidence, petitioner could have obtained the medical records documenting his injuries and treatment directly from the hospital. Indeed, petitioner testified that he later did obtain the records, simply by asking for them, with no difficulty. (Tr. at 51; Pet's Ex. 3.) There is no violation of Brady or Youngblood when the defendant is able to obtain comparable evidence on his own through the exercise of reasonable diligence. Kimoto, 588 F.3d at 475; Todd, 424 F.3d at 534. The only reason petitioner offers for his failure to request the records during the pendency of the criminal case is that he relied on his lawyer. (Tr. at 52; see also Pet.'s Rep. Br. at 2.) But, as I will discuss later, petitioner never told Malone about the alleged beating or the trip to the hospital; thus, there was no reason for Malone to request the records.

---

[6]It is true, as petitioner notes in his post-hearing reply brief, that it does not matter whether the report was retained by the detectives or arresting officers, as opposed to the MPD medical section. However, petitioner fails to show that such a report was created or retained by anyone within the department.

[7]In his post-hearing briefs, petitioner contends that the police cannot evade Brady by failing to document exculpatory information in a report. (Pet.'s Br. at 3, citing Arizona v. Youngblood, 488 U.S. 51, 58 (1988).) However, despite recognizing that Youngblood requires bad faith in such a situation, petitioner makes no attempt to show it.

11

Nor can petitioner show that the evidence is "material," i.e., that there is a reasonable probability that, had it been disclosed to the defense, the result of the proceeding would have been different. E.g., United States v. Jumah, 599 F.3d 799, 808 (7th Cir. 2010); United States v. Are, 590 F.3d 499, 509 (7th Cir. 2009), cert. denied, 2010 WL 1526354 (U.S. Oct. 4, 2010). On this issue, petitioner argues that the evidence tended to corroborate his claims of abuse, and that, had Malone been provided the medical records, Malone would have "followed up" on the issue (see Tr. at 22-23; see also Pet.'s Rep. Br. at 2) and presumably filed a motion to suppress petitioner's confession. With the statements suppressed, petitioner contends, the government would have been without its key piece of evidence, severely damaging its case at trial.

As an initial matter, it seems odd to argue, on the one hand, that Malone ignored petitioner's detailed verbal complaints about the abuse, but that he would have swung into action had he been provided with a record documenting the allegation. In any event, in arguing this issue petitioner fails to appreciate that this was not a trial case; rather, he pleaded guilty. The Seventh Circuit has questioned whether Brady applies at all in such a situation, at least where, as here, the "suppressed" evidence does not implicate guilt or innocence. See McCann v. Mangialardi, 337 F.3d 782, 787-88 (7th Cir. 2003); see also United States v. Conroy, 567 F.3d 174, 178-79 (5th Cir. 2009) (holding that a guilty plea waives the right to claim a Brady violation), cert. denied, 130 S. Ct. 1502 (2010); cf. United States v. Moussaoui, 591 F.3d 263, 286 (4th Cir. 2010) (collecting cases discussing Brady claims following a guilty plea).[8] Even

---

[8] I also note in this regard that petitioner's plea agreement appears to waive his right to bring a Brady claim. However, because the government has not raised the agreement as a bar to petitioner's claim I decline to address the issue further.

those courts which have recognized the availability of a Brady claim following a guilty plea require that the defendant show "a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." E.g., United States v. Avellino, 136 F.3d 249, 256 (2d Cir. 1998) (internal quote marks omitted). Petitioner cannot make such a showing here. Whatever may have occurred during his arrest and interrogation, there can be no doubt that petitioner was aware of such facts at the time he entered his plea; thus, there can be no claim that failure to disclose this information rendered his plea unknowing or involuntary. See United States v. Walters, 269 F.3d 1207, 1214-15 (10th Cir. 2001) (explaining that in only limited circumstances will a Brady violation render a plea involuntary). The record shows that petitioner pleaded guilty with full awareness of the circumstances and in an attempt to reduce his prison exposure.[9]

Finally, even if it would be appropriate to speculate about a trial without his confession, petitioner offers only generalities about the strength of the government's remaining case. It may be true, as petitioner notes, that cooperators, as a general matter, must be viewed with caution, and that eyewitnesses, as a general matter, may be unreliable. But petitioner makes

---

[9] Further, while it is true that the parties and the court agreed, for purposes of the ineffective assistance claim, to focus first on performance (i.e., what petitioner told Malone) rather than prejudice (i.e., whether a motion to suppress would have been successful), I cannot accept petitioner's contention that the missing records would have materially bolstered a suppression claim. At most, the suppressed records would have shown that petitioner was struck and injured during his arrest, something Malone likely could have discerned from the discovery the government did provide. (See Pet.'s Ex. 2.) Petitioner has made no showing that the medical/transport records, had they been timely provided, would have bolstered a claim that he was abused or threatened at the time of his interrogation. As discussed above, petitioner claimed that the interrogating officer, Detective Starr, threatened him with more abuse if he did not cooperate. The success vel non of a suppression motion would have hinged primarily on the credibility of that claim. And for the reasons set forth in this decision, I find petitioner's clams about these events not credible.

13

no attempt to show that the cooperating co-defendants in his case could have been effectively impeached; nor does he show that any identifications by the victims in his case were unreliable.[10] Attorney Malone testified that the government's case was "extremely strong," and that characterization is certainly consistent with my recollection.

Ultimately, petitioner offers little more than speculation and unsupported assertions that the government suppressed material evidence. See Jumah, 599 F.3d at 809. Therefore, his Brady claim must be denied.

**B.    Ineffective Assistance Claims**

Petitioner next argues that Malone provided ineffective assistance by failing to move to suppress petitioner's confession and by inducing petitioner's guilty plea with the false promise that the government would file a Rule 35 motion. In order to make out a claim of ineffective assistance, petitioner must show two things. First, he must show that "counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Second, he must show prejudice, i.e. "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

**1.    Failure to File Motion to Suppress**

Petitioner's first claim of ineffectiveness pertains to Malone's failure to pursue a motion to suppress based on the alleged brutality of the arresting officers. This, in turn, requires a

---

[10]It is unnecessary to get into the details of the case, but I do note that petitioner invaded the homes of and abducted some of his victims. This is not a case in which victim identification would be based on brief observation.

14

determination of whether petitioner advised Malone of the factual basis for such a motion, yet Malone did nothing.[11] See United States v. King, 936 F.2d 477, 480 (10th Cir. 1991) ("In determining whether a defendant has been afforded effective assistance of counsel, the adequacy or reasonableness of an attorney's action is necessarily conditioned by the defendant's own action or inaction."). The parties agree that resolution of this issue requires me to determine who is telling the truth, petitioner or Malone. I find Malone far more credible.

Malone, an experienced criminal defense attorney with no history of discipline or ineffectiveness, testified that he had no recollection of petitioner ever advising him of police abuse. I find it highly unlikely that an attorney of Malone's caliber would forget a story like the one petitioner told at the hearing. Further, Malone's detailed notes include no reference to a police beating. Based on his demeanor, I found Malone highly credible.

Petitioner's testimony, on the other hand, had problems. In addition to his demeanor on the stand, which gave me little confidence in his testimony, other factors cut strongly against his claims. First, I find it significant that petitioner told no one else associated with the case about the abuse and threats he allegedly experienced at the hands of the police, not the psychologist and mitigation expert Malone hired, not pre-trial services, not the PSR writer. Petitioner claimed that he mentioned the pistol whipping to the officers during his debriefing sessions, but he presented no corroborating testimony from those officers at the hearing. (Tr. at 53.) Second, petitioner's claim that Malone promised to use the abuse as some sort of

---

[11]As noted earlier, in order to show prejudice based on failure to file the motion, petitioner must demonstrate that the motion had merit. See Cieslowski, 410 F.3d at 360 ("When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, we have required that a defendant prove the motion was meritorious."). However, the court and the parties have elected to first litigate the performance issue, which seemed more efficient.

15

bargaining chip makes little sense. I find it highly unlikely that an attorney of Malone's experience and background would consider serious police misconduct fodder for negotiation rather than formal legal action. Third, the fact that petitioner is currently serving a 41 year prison sentence provides him with a strong incentive to slant his testimony in order to persuade the court of his version of events.[12]

In his post-hearing brief, petitioner notes the visible injuries on his booking photo, but that photo, taken several days before petitioner first met Malone, does not depict someone who had experienced a severe beating. Petitioner argues that the police report documenting the use of force during his arrest should have raised red flags for Malone, but I fail to see how. According to the report, petitioner, wanted in connection with home invasion robberies and armed with an electric stun gun, led the police on a foot chase, during which one officer was injured. The report indicates that the officers had to deliver "focused strikes" to cause "him to stop activating the electric stun gun." (Pet.'s Ex. 2.) In sum, the report supports the notion that the officers struck petitioner in order to defend themselves and take him into custody. To the extent that other documents record his split lip (Pet.'s Ex. 5), the evidence made available to Malone supports the notion that petitioner suffered those injuries due to his own resistance to arrest.

Petitioner also claims in his post-hearing briefs that the fact that he filed a civil suit against the officers demonstrates that he was not shy about talking about the alleged abuse.

---

[12]As petitioner notes in his post-hearing reply brief, the court should not automatically discredit his testimony because he is a felon and Malone is not. I have not done so. Based on both demeanor and the objective circumstances, I find Malone more credible. Further, although I am the fact-finder in this matter and make my own independent credibility determination, it is worth noting that the jury in the § 1983 case apparently rejected petitioner's claims about his treatment by the police as well.

16

But Malone testified that he knew nothing about the § 1983 case (Tr. at 24), which petitioner re-filed right around the time of his sentencing and which went to trial long after the criminal case ended.[13]

An attorney may not generally be faulted for failing to file a motion to suppress where his client failed to provide the necessary factual predicate for such a motion. See, e.g., Langford v. Day, 110 F.3d 1380, 1387 (9th Cir. 1996); see also Allen v. Secretary, Florida Dept. of Corrections, 611 F.3d 740, 752 (11th Cir. 2010) (stating that, in evaluating the reasonableness of a defense attorney's investigation, the court weighs heavily the information provided by the defendant); U.S. ex rel. Kleba v. McGinnis, 796 F.2d 947, 958 (7th Cir. 1986) (finding no ineffective assistance where the defendant failed to provide counsel with sufficient information to pursue the issue). Because petitioner failed to advise Malone of the facts supporting a motion to suppress, Malone cannot be deemed to have performed deficiently, and petitioner's first claim of ineffective assistance must be denied.[14]

### 2. Advice Preceding Guilty Plea

Petitioner's second ineffective assistance claim is that Malone induced a guilty plea by promising petitioner that he would receive a Rule 35(b) sentence reduction motion. Where a defendant enters his "plea upon the advice of counsel, the voluntariness of the plea depends

---

[13]See n. 2, supra.

[14]Petitioner cites United States v. Longmire, 761 F.2d 411, 416-17 (7th Cir. 1985), in which the court stated "that once the defendant establishes a basis for his motion to suppress, the burden shifts to the government to prove by a preponderance of the evidence that the statement was given voluntarily." Petitioner notes that the government made no effort to meet its burden here. However, Longmire would be relevant only if I reached the prejudice prong of petitioner's ineffective assistance claim. Because the claim fails on the performance prong, I need not address prejudice.

on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" Hill, 474 U.S. at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

As with the first, this claim turns on witness credibility. Malone denied guaranteeing that petitioner would receive a Rule 35 motion, while petitioner claimed that Malone promised him such a motion would be filed. I again find Malone more credible. Malone, an experienced federal defender, testified that he knew full well that he could not guarantee a Rule 35 motion. I see no reason why he would have stated otherwise in petitioner's case.

In addition to finding Malone more believable based on demeanor and experience, petitioner's claim that Malone promised him a motion is flatly contrary to the record. Petitioner's plea agreement contains no promise of a substantial assistance motion, and during the plea colloquy petitioner assured me that aside from what was set forth in the written agreement no promises had been made to induce him to plead guilty. (Plea Hr'g Tr. [Case No. 04-CR-71, Docket # 160] at 8; Aug. 11, 2010 Evid. Hr'g Tr. at 55-56.) As the Seventh Circuit has stressed, a motion that can succeed only if the defendant lied to the judge during the plea colloquy may be rejected out of hand unless the defendant has a compelling explanation for the contradiction. United States v. Peterson, 414 F.3d 825, 827 (7th Cir. 2005); see also United States v. Stewart, 198 F.3d 984, 986 (7th Cir. 1999). Petitioner offers no persuasive justification here, stating only that he did think he had to reveal the promise because Malone allegedly told him, "This is part of the procedure and this is part of the plea." (Tr. at 46.) I find

18

that Malone said no such thing, and that petitioner's claim is false.[15]

In his post-hearing brief, petitioner attempts to recast his complaint; he states that he understood his plea was necessary as a matter of procedure in order to return for a later sentence reduction, and Malone performed deficiently by failing to sufficiently explain things. (Pet.'s Br. at 7.) But that's not what petitioner said at the hearing; he claimed that Malone <u>promised him a motion in his case</u>. Petitioner did not claim that Malone's advice was unclear, but that it was false. In any event, I credit Malone's testimony that he properly explained how Rule 35 works.

Petitioner claims that his version is bolstered by the fact that, after sentencing, he tried to contact Malone to see when he would be coming back to court. But this shows nothing more than that petitioner hoped for a sentence reduction, which, under his plea agreement, was at least possible. It does nothing to bolster his claim that Malone <u>promised</u> him a Rule 35 motion. Malone's advice may have given petitioner hope for a Rule 35 motion, but because Malone made no unreasonable promise or assurance of such a motion, petitioner cannot show ineffective assistance. <u>See</u> <u>Wellnitz v. Page</u>, 420 F.2d 935, 936 (10th Cir. 1970) (distinguishing between good faith predictions about sentencing, which do not violate the Sixth Amendment, and reckless promises that a specific sentence will follow a guilty plea, which may be deemed constitutionally ineffective); <u>see also</u> <u>United States v. Martinez</u>, 169 F.3d 1049, 1053 (7th Cir. 1999) ("In this circuit, an attorney's mere inaccurate prediction of a sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim.") (internal

---

[15]At the hearing, the government cross-examined petitioner very carefully about what Malone allegedly said. Petitioner confirmed that Malone said not that there is <u>a</u> procedure; rather, Malone allegedly said: "This is going to happen in your case." (Tr. at 58.)

19

quote marks omitted). Petitioner's second ineffective assistance claim must therefore be denied.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's § 2255 motion is **DENIED**. The Clerk is directed to enter judgment accordingly.

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 petitioner. In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether reasonable jurists could debate whether the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons stated above, petitioner has not made such a showing, so I decline to issue a COA.

Dated at Milwaukee, Wisconsin, this 19th day of November, 2010.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge